**Dennis Van WEY, Plaintiff–Appellant,**

v.

**DYNO NOBEL, INC., Defendant–Respondent.**

**No. 24397.**

Missouri Court of Appeals,
Southern District,
Division Two.

May 29, 2002.

Motion for Rehearing or Transfer to Supreme Court Denied June 20, 2002.

Application for Transfer Denied
Aug. 27, 2002.

James H. Arneson, Springfield, for appellant.

Sara E. Welch, Patricia A. Konopka, Stinson, Mag & Fizzell, P.C., Kansas City, for respondent.

JOHN E. PARRISH, Judge.

Dennis Van Wey (plaintiff) appeals a summary judgment granted Dyno Nobel, Inc., (defendant) in an action plaintiff brought for allegedly having been dis-

charged from employment because he sought compensation under The Workers' Compensation Law. This court reverses and remands.

Plaintiff was employed by defendant on June 26, 1996, when he sustained a work-related injury. Plaintiff reported the injury to his foreman and was instructed to see the company nurse. The nurse scheduled an appointment for plaintiff with defendant's company doctor, Dr. Rhoades, on July 2, 1996.[1] The July 2, 1996, date was the first appointment Dr. Rhoades had available.

The company nurse took plaintiff to the appointment with Dr. Rhoades. According to plaintiff, Dr. Rhoades told him to go home; that he possibly had a ruptured disk and severed nerves. Dr. Rhoades told plaintiff he would be off work for a long time; that Dr. Rhoades would "take care of it." An MRI was scheduled for plaintiff on July 10.

Defendant's human resources specialist called plaintiff on July 2 and told him to come to the plant the next day for a meeting. The people attending the meeting were plaintiff, the plant production supervisor, Dr. Rhoades, the plant nurse, the human resources specialist, and a friend of plaintiff's, Patricia Rasor. At the meeting, Dr. Rhoades told defendant's human resources specialist that plaintiff was cleared for light duty; that plaintiff should not lift more than five pounds; that his duties should not include bending or twisting; that plaintiff should be placed in a job where he could get up and move around.

Plaintiff was directed to report for light duty. He was instructed to help the company nurse answer the telephone in her

---

1. The company doctor's name is spelled "Rhodes" in plaintiff's deposition. It is spelled "Rhoades" elsewhere in the pleadings, in copies of documents included in the record on appeal, and in the parties' briefs.

office and perform other clerical duties. Plaintiff was told his job would be in jeopardy if he did not accept the light duty to which he was being assigned. He was told to report for work on July 4 although that date was an employee holiday.

Plaintiff saw his personal physician, Dr. Richardson, on July 3. Dr. Richardson concurred with the statement Dr. Rhoades made to plaintiff at the time of Dr. Rhoades' examination; that plaintiff should not do light duty until after the MRI.

On July 5 plaintiff filed a claim for workers' compensation. On July 8 defendant sent a letter to plaintiff telling him he was terminated because he had refused to report to light duty on July 5, 1996.

Plaintiff asserts the trial court erred in granting defendant's motion for summary judgment; that whether plaintiff was discharged for exercising his rights under the workers' compensation laws was a material issue of fact.

Appellate courts, when considering appeals from summary judgment, review the record in the light most favorable to the party against whom judgment was entered. *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo.banc 1984). The party against whom judgment was entered is accorded the benefit of all reasonable inferences from the record. *Martin v. City of Washington*, 848 S.W.2d 487, 489 (Mo.banc 1993). Because the propriety of summary judgment is an issue of law, the trial court's judgment is reviewed on the basis of the record submitted and the law, and appellate courts need not defer to the trial court's order granting summary judgment. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993).

Summary judgment is granted only where no genuine issue of material fact exists, and judgment is proper as a matter of law. Rule 74.04(c)(3); *Rodgers v. Czamanske*, 862 S.W.2d 453, 457 (Mo. App.1993). A genuine issue of material fact exists where the record contains competent evidence that two plausible but contradictory accounts of essential facts exist. *ITT Commercial Finance Corp.*, 854 S.W.2d at 382. *Cash v. Benward*, 873 S.W.2d 913, 915–16 (Mo.App.1994).

Section 287.780 [2] provides:

No employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under this chapter. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer.

The elements of a cause of action brought under § 287.780 are:

(1) [P]laintiff's status as an employee of defendant before the injury; (2) plaintiff's exercise of a right granted by the Act; (3) employer's discharge of or discrimination against the plaintiff; and (4) an exclusive causal relationship between plaintiff's actions and defendant's actions.

*Stephenson v. Raskas Dairy, Inc.*, 26 S.W.3d 209, 212 (Mo.App.2000), *cert. denied*, 531 U.S. 1152, 121 S.Ct. 1098, 148 L.Ed.2d 970 (2001).

The only element challenged by defendant's motion for summary judgment was element (4), that the record demonstrated no basis for finding the exclusive causal relationship that resulted in plaintiff's discharge was plaintiff's exercise of his right to claim workers' compensation benefits. Defendant argues that the reason for plaintiff's discharge was plaintiff's failure

---

2. References to § 287.780 are to RSMo 1994.

to report for light duty after Dr. Rhoades advised defendant that plaintiff could perform those duties. Plaintiff argues the real reason for his discharge was because he sought benefits; that the discharge occurred on July 8 following the filing of a claim by plaintiff on July 5, although the MRI that had been requested to evaluate plaintiffs' injury was not scheduled until July 10.

Plaintiff was deposed after he filed this action. A copy of his deposition is included in the record on appeal. Plaintiff testified that the plant production supervisor displayed anger toward him at the July 2 meeting; that the production manager ordering him to be at work July 4, a date that was a holiday for employees, evidenced this.

Plaintiff was asked what caused him to believe the plant supervisor was retaliating against him. Plaintiff· replied that it was the plant supervisor's actions at the July 2 meeting. Plaintiff explained, "He stood up raving, taking his finger and going at me like this, denying me everything that I asked for." Plaintiff continued, "And telling me I will not get it. And they will determine whether I get Workman's Comp or not." Plaintiff said the production supervisor told him several months before the July 2 meeting, "We've got a committee to determine whether we allow Workman's Comp to the people."

■ The fact issue for determination in this case is the "real reason" plaintiff was discharged. A fact-finder could not make that determination from the summary judgment facts. As in *Kummer v. Royal Gate Dodge, Inc.*, 983 S.W.2d 568 (Mo.App. 1998), the record on appeal contains competent evidence of two possible, but contradictory, reasons for plaintiff's discharge. " 'Where the facts are in dispute as to whether the discharge was or was not wrongful, the question is always one for the jury under proper instructions.' " *Id.*

at 573, *quoting Wiedower v. ACF Industries, Inc.*, 715 S.W.2d 303, 307 (Mo.App. 1986).

Defendant argues this case is akin to *Stephenson v. Raskas Dairy, Inc., supra,* in that Dr. Rhoades advised defendant that plaintiff could return to work; that plaintiff's failure to return to work warranted his discharge and, therefore, plaintiff, as a matter of law, cannot demonstrate a causal connection between his having pursued a claim for workers' compensation and his discharge. The facts in *Stephenson* are unlike the facts of this case in that the employee in *Stephenson* completed a prescribed medical treatment, viz., bilateral carpal tunnel surgery, after which she was released to full duty with no medical restrictions related to her wrists. The employee continued experiencing problems in performing her assigned tasks after returning to work. Her employer went to considerable lengths to identify job positions the employee could perform. When that was unsuccessful, she was discharged for being unable to perform the work that was available. *Stephenson* held this to be a legitimate and nonpretextual reason to discharge the employee.

Here, not only had plaintiff not been treated at the time of his discharge, his injury had not been fully evaluated. He was discharged two days before an MRI examination that had been ordered for the purpose of evaluating his injury. A material factual issue exists concerning the real reason plaintiff was discharged. Summary judgment was not appropriate. The judgment is reversed. The case is remanded for further proceedings.

PREWITT and RAHMEYER, JJ., concur.