Shane C. FARRIS and R. Joel Farris, Personal Representatives of the Estate of L.T. Wall, a/k/a Lilburn Thompson Wall, Appellants/Cross–Respondents,

v.

Pamela COOK, Respondent/Cross–Appellant.

Nos. 27846, 27889.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 5, 2007.

Motion for Rehearing and Transfer to Supreme Court Denied Sept. 25, 2007.

**2**

Lee E. Poppen, Tina G. Fowler, Springfield, MO, for appellants/cross-respondents.

Kevin L. Austin, for respondent/cross-appellant.

JOHN E. PARRISH, Judge.

In No. 27889 Shane C. Farris and R. Joel Farris, personal representatives of the Estate of L.T. Wall, deceased, appeal a judgment in an action they brought to recover what they contend were the shares of federal estate tax and state estate tax attributable to assets held by Pamela Cook (defendant). Defendant appeals in No. 27846. The appeals were consolidated by this court.

The trial court entered summary judgment for the estate and against defendant on the representatives' claim in the amount of $135,885 for federal estate tax due from defendant plus interest at the rate of nine per cent from the date the petition for recovery from defendant was filed, October 6, 2004. The trial court denied the personal representatives' request for summary judgment for a proportionate amount of state estate tax thereby granting defendant's motion for summary judgment with respect to that claim. This court reverses and remands for further proceedings.

◼ Review of a summary judgment is essentially de novo. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). "The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.* Summary judgment is appropriate only where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Van Wey v. Dyno Nobel, Inc.,* 81 S.W.3d 208, 210 (Mo.App.2002). A genuine issue of material fact exists if the record contains competent evidence to support either of two plausible, yet contradictory, accounts of a fact material to recovery. *Id.* The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the party against whom summary judgment was entered. *Flowers v. McDonald County,* 195 S.W.3d 434, 436 (Mo.App.2006).

## Facts

L.T. Wall died intestate August 15, 2003. The value of the gross estate for tax purposes was $2,713,623. Federal and state estate taxes were calculated to be $716,372. The estate incurred additional expenses for attorney fees, medical claims, funeral expenses, property taxes, appraisal fees, income tax preparation, and property management. The personal representatives valued the assets in the estate immediately after Mr. Wall's death at $568,459. Other assets owned by Mr. Wall had been held in accounts with other persons in forms that had rights of survivorship or by Mr. Wall in an account with a designated payable-on-death beneficiary. Those accounts were:

| | |
|---|---|
| Checking Account at the Bank of Billings jointly held with Vencene Nelson | $1,315,651 |
| TelComm Credit Union Account held with Sherrill Couts | 160,073 |
| TelComm Credit Union Account held with Mary Catherine Williams | 98,000[1] |
| TelComm Credit Union Account with defendant as payable-on-death beneficiary | 571,440 |

The personal representatives sought contributions from Vencene Nelson, Sherrill Couts, Mary Catherine Williams, and defendant for pro rata shares of estate tax attributable to the assets in those accounts. The amount sought from each person was calculated by determining a percentage the value of the assets he or she received bore to the total value of the gross taxable estate. The total amount of estate tax owed was multiplied by those percentages to ascertain how much each recipient of property owed the estate. According to the calculations, the amount each owed was:

| | |
|---|---|
| Vencene Nelson | $347,440 |
| Sherrill Couts | 42,266 |
| Mary Catherine Williams | 25,789 |
| Defendant | 151,155 |

Sherrill Couts paid the sum of $42,266 to the estate for her share of estate tax. Mary Catherine Williams paid her share by check payable to "IRS."[2] Vencene Nelson, by his affidavit filed in support of the personal representatives' motion for summary judgment, stated that when he was requested to pay $347,440 as his "equitable apportionment" of the estate tax due, he was not initially persuaded to pay it. Mr. Nelson's affidavit states:

. . .

10. After legal consultation, I executed a Qualified Partial Disclaimer on May 14, 2004, incorporated by reference herein, regarding the above described account.

11. As a result of this Qualified Partial Disclaimer, I maintained sole possessory interest of a one-half portion of the above described account, and from the remaining account funds agreed to pay the estate taxes resulting from my one-half share and to divest the remaining funds of the account to the Estate.

12. On May 15, 2004, I tendered a bank money order drawn on the Bank of Billings payable to the above described Personal Representatives in the amount of $174,385.86 to satisfy the equitable apportionment of the estate taxes generated from the one-half share of the above described account of which I maintained sole possessory interest, a true and accurate copy of which is

---

1. The personal representatives assert the value of this account at $109,000. The value assigned the account for determining federal estate tax was $98,000.

2. Ms. Williams' check was in the amount of $27,789. She was reimbursed the $2,000 overpayment by the estate.

attached to this affidavit as Exhibit A. [3]

13. On May 17, 2004, I tendered a bank money order drawn on the Bank of Billings payable to the above described Personal Representatives in the amount of $486,273.74 in satisfaction of the remaining funds of the above described account, less my one-half share of which I maintained sole possessory interest, a true and accurate copy of which is attached to this affidavit as Exhibit B.

. . .

Defendant refused to pay any amount for estate tax attributable to the payable-on-death account that was paid to her.

*Tax Liability—Background*

■ The Internal Revenue Code imposes liability for payment of federal estate tax on personal representatives of decedents' estates. *See* 26 U.S.C. § 2002. Likewise, Missouri statutes place the duty to pay Missouri estate tax on personal representatives (referred to in the applicable statute as "the executor"). § 145.051.[4] These statutes, however, determine only the responsibility for initial payment of the tax. Determination of who bears the ultimate burden of the tax is determined by state law. *Estate of Boder*, 850 S.W.2d 76, 78 (Mo.banc 1993). At the time *Boder* was decided, Missouri had no apportionment statute for determining the ultimate burden of federal estate tax. The Missouri estate tax (that had replaced Missouri's

inheritance tax), in effect when *Boder* was decided, did not provide for direct apportionment of liability to the respective heirs.[5] *Id.*

*Boder* explained:

In the absence of a statutory provision for determination of the ultimate burden of estate taxes, Missouri courts look first to the decedent's testamentary instruments to discern the decedent's intent. *Commerce Trust Co. v. Starling*, 393 S.W.2d 489, 494 (Mo.1965). Where the testator fails to express his or her intent, the court applies equitable principles in determining the ultimate burden of death duties. *Hammond v. Wheeler*, 347 S.W.2d 884, 890 (Mo.1961). The doctrine of equitable apportionment places the burden of the federal estate tax on the property that generates the tax and exonerates from the burden the property which does not. *Jones v. Jones*, 376 S.W.2d 210, 212 (Mo.banc 1964).

*Id.* at 78–79. In this case, decedent having died intestate, there was no expression of intent with respect to how the burden of estate tax should be borne by recipients of decedent's property.

In 1995, after *Boder*, the legislature adopted § 461.300.[6] It includes the following:

1. Each recipient of a recoverable transfer of a decedent's property shall be liable to account for a pro rata share of the value of all such property received, to the extent necessary to discharge . . . claims remaining unpaid *af-*

---

3. The copy of the affidavit that is included as part of the legal file does not include an exhibit.

4. References to statutes are to RSMo 2000 unless stated otherwise.

5. Assessment of the inheritance tax that had been in effect in Missouri prior to 1980 was

charged to the person or entity entitled to receive the property that had belonged to a decedent and was collected directly from the recipient. *Boder*, 850 S.W.2d at 78.

6. § 461.300 was amended in 2004. The substance of the statute was not affected by the amendment.

*ter application of the decedent's estate,* including expenses of administration and costs as provided in subsection 3 of this section, and *including estate or inheritance or other transfer taxes imposed by reason of the decedent's death* .... No proceeding may be brought under this section when the deficiency described in this subsection is solely attributable to costs and expenses of administration. [Emphasis added.]

. . .

3. The judgment in a proceeding authorized by this section shall take into account the expenses of administration of the estate including the cost of administering the additional assets obtained in the proceeding, and the costs of the proceeding to the extent authorized by this subsection. The court may order the costs of the proceeding, including attorney fees, to be treated as expenses of administration of the estate.

. . .

Section 461.300 established a method for assigning the ultimate burden of estate tax. Thereafter, in 1997, the legislature enacted § 469.010. It states, as applicable to this case:

Any individual to whom property or an interest therein is donatively transferred by any means, including a transfer resulting from another disclaimer, may disclaim all or any portion of the transfer. Unless the terms of the transfer otherwise provide, the disclaimer shall cause the items of the transfer to be applied to the disclaimed transfer and to any future interests taking effect

thereafter as if the disclaimant had died immediately before the transfer.... For all purposes the disclaimed interest is deemed to have passed directly from the transferor to the ultimate taker or takers and is not subject to the claim of any creditor of the disclaimant. A disclaimed portion of a transfer passes to the same ultimate taker or takers and in the same proportions as in the case of a disclaimer of all of the transfer.

*Issues on Appeal*

■ The estate asserts two points on appeal. Both argue that the trial court erred in granting defendant's motion for summary judgment by denying the estate's claim for contribution for Missouri estate tax.[7] Point I asserts that the granting of defendant's summary judgment was contrary to § 461.300 in that the statute "requires [defendant] as a recipient of a non-probate transfer to contribute, based on the value of the property she received, a pro rata share of such property for the payment of Missouri estate taxes." Point II asserts that the granting of defendant's summary judgment was contrary to Missouri's doctrine of equitable contribution.

Defendant's appeal claims the trial court erred in granting the estate's motion for summary judgment by awarding judgment for an amount as a contribution by defendant for federal estate tax. Defendant asserts this was error "in that V.A.M.S. § 461.300 is applicable, thereby rendering the doctrine of equitable contribution inapplicable, and said statute would only render [defendant] liable if the estate had claims remaining unpaid after application

7. Both points on appeal complain further that it was error to deny the estate's motion for summary judgment with respect to its assertion that the estate was entitled to judgment for contribution from defendant for Missouri estate tax. "Denial of a motion for summary

judgment does not present an appealable issue." *Shelter Mut. Ins. Co. v. DeShazo*, 955 S.W.2d 234, 238 (Mo.App.1997). *See also Atkins v. McPhetridge*, 213 S.W.3d 116, 120 n. 2 (Mo.App.2006).

of the decedent's estate, which the estate did not."

The estate, in its Point I, and defendant, in her point relied on in her appeal (her Point II), rely on § 461.300. Section 461.300.1 provides, as defendant points out, that the liability for estate tax imposed on recipients of recoverable transfers of decedents' property extends only to "claims [which include the taxes denominated in the statute] remaining unpaid after application of the decedent's estate."

*Boder* held that determination of who bears the ultimate burden of federal estate tax was for determination by state law. 850 S.W.2d at 78. Section 461.300.1 established how that determination is to be made both as to federal and state estate tax. Decedent's estate is first applied to pay the obligations. Thereafter, if the proceeds in the estate are not sufficient, each recipient of a recoverable transfer of the decedent's property is liable, to the extent required to pay the obligations, "for a pro rata share of the value of all such property received." [8]

The first determination to be made to ascertain if recipients of recoverable transfers of a decedent's property are liable to a decedent's estate is the determination of whether the amount of the estate tax exceeds the value of the estate. Personal representatives must determine the amount of estate tax owed. The personal representatives must then value decedent's estate. The value of the estate is a fact issue in this appeal.

Although the motions for summary judgment and supporting affidavits filed in the trial court asserted that Vencene Nelson executed a "Qualified Partial Disclaim-

er"; that a bank money order was tendered to the personal representatives "in satisfaction of the remaining funds of [the joint account that had been held by decedent and Nelson], less [Nelson's] one-half share," nothing before this court indicates that the trial court considered the amounts paid the estate as a result of the "disclaimer" in valuing the assets of the estate. Section 469.010 permits "[a]ny individual to whom property or an interest therein is donatively transferred by any means" to "disclaim all or any portion of the transfer." It provides that "[f]or all purposes the disclaimed interest is deemed to have passed directly from the transferor to the ultimate taker or takers...." Provided that Nelson's effort to disclaim the interest in the joint account in question was effective, a determination this court lacks sufficient evidence to make, the ultimate taker would be decedent's estate and those funds would be part of that estate. Those funds would be available for use in the "application of the decedent's estate" for purposes of payment of federal estate tax and Missouri estate tax, i.e., they would be additional funds to be applied in payment of claims and costs. § 461.300.1.

Defendant made a further assertion in her motion for summary judgment that the trial court did not address. Defendant questioned whether Nelson was a debtor or was otherwise liable to decedent for an amount that the funds paid to the account by means of the "disclaimer" was intended to satisfy. If that were the case, regardless of § 469.010, the funds transferred by or on behalf of Nelson would be a part of decedent's estate for purposes of paying estate taxes and other claims. *See Vande-*

---

8. "Recoverable transfer" is defined as "a non-probate transfer of a decedent's property under sections 461.003 to 461.081 and any other transfer of a decedent's property other than from the administration of the decedent's pro-

bate estate that was subject to satisfaction of the decedent's debts immediately prior to the decedent's death, but only to the extent of the decedent's contribution to the value of such property." § 461.300.10(4).

*venter v. Florida Savings Bank,* 162 Mo. App. 34, 141 S.W. 900, 903 (1911).

 The trial court must determine the value of decedent's estate. It must ascertain the legal efficacy of Vencene Nelson's "disclaimer."

"Where the record reasonably supports any inference other than those necessary to support a judgment for the movant, a genuine issue of material fact exists and the movant's motion for summary judgment should be overruled." *J.M. v. Shell Oil Co.,* 922 S.W.2d 759, 761 (Mo.banc 1996). "It is not the truth of these facts which matter, but whether the facts are disputed." *Rogers v. Frank C. Mitchell Co.,* 908 S.W.2d 387, 389 (Mo.App.1995).

*Birdsong v. Christians,* 6 S.W.3d 218, 224 (Mo.App.1999).

The evidence each party to this appeal relied on in opposition to the motion for summary judgment of the other disclosed the existence of a genuine issue as to a material fact underlying the right to judgment. The issue is the value of decedent's estate. The judgment is reversed.[9] The case is remanded for further proceeding in the circuit court.

RAHMEYER, P.J., and SCOTT, J., concur.

*ON MOTION FOR REHEARING AND/OR APPLICATION FOR TRANSFER TO SUPREME COURT*

PER CURIAM.

██ Shane C. Farris and R. Joel Farris, personal representatives of the Estate of L.T. Wall, filed a motion for rehearing directed to the nature of the payable on death (POD) account, the proceeds of which were paid to Pamela Cook (defendant). The personal representatives contend that the establishment of the POD account prior to decedent's death established a life estate in decedent with a remainder interest in defendant; that, therefore, the personal representatives are entitled to recover certain federal estate taxes by reason of 26 U.S.C. §§ 2207B and 2036 that address transfers with retained life estates. They argue that the POD account was a transfer with retained life estate; that notwithstanding § 461.300,[1] they are entitled to recover, on behalf of decedent's estate, federal estate taxes they attribute to the value of the POD account.

 This court does not find that a POD account is a transfer with retained life estate. A POD account creates no interest in a named payable-on-death designee when the account is established. The person who establishes a POD account owns that account and has sole control over the account. § 369.186.1. As the owner of the account, he or she is "entitled to cancel, change, give away, or otherwise deal with the account as if no other person were named in the account." *Id.* Whereas, the creation of a life estate divests the grantor of the remainder interest so established and vests that remainder in the grantee at the time the particular estate is created. *Grimes v. Rush,* 355 Mo. 573, 197 S.W.2d 310, 312 (1946). The remainder passes at the time the estate is created. *Id.* The personal representatives' motion for rehearing or, alternatively, application to transfer is denied.

---

9. For purposes of this appeal this court need not, and does not, address the effect § 461.300 may have on Missouri's doctrine of equitable contribution.

1. References to statutes are to RSMo 2000 unless stated otherwise.